*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL BETH LITKOUHI,

Plaintiff-Appellant,

v

ROCHESTER COMMUNITY SCHOOL DISTRICT,

Defendant-Appellee.

UNPUBLISHED
February 22, 2024

No. 364409
Oakland Circuit Court
LC No. 2022-193088-CZ

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

In this case involving FOIA requests for teacher materials, plaintiff, Carol Beth Litkouhi (Litkouhi), appeals as of right the trial court's order granting summary disposition in favor of defendant, Rochester Community School District (Rochester). We affirm.

## I. BACKGROUND

This case originates from a request under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., from Litkouhi, a parent within the Rochester Community School District, to Rochester for records related to a course on ethnic and gender studies taught in a district school. In late August 2021, Litkouhi contacted Neil DeLuca, Rochester's Executive Director of Secondary Education. The specific details of that contact are unclear, but it related to an elective course offered to high school students called "History of Ethnic and Gender Studies." In response, DeLuca emailed Litkouhi a description of the course and informed her that he could connect her with one of the teachers teaching the course for various materials. In the afternoon that same day, Litkouhi responded and asked to schedule a conversation with DeLuca.

DeLuca contacted Chad Zwolinski, a teacher of the ethnic and gender studies course, and, "to be responsive to Ms. Litkouhi," asked him "to prepare a document to describe the topics addressed in the course." Zwolinksi produced an outline of the first two weeks of the course that detailed various activities, including "community building activities," writing activities, and other assignments. In early September 2021, Litkouhi followed up with DeLuca after he offered to send her additional course materials. DeLuca responded the same day, informing Litkouhi he would

-1-

stop at one of the schools to "obtain a copy." Later that same evening, DeLuca forwarded Litkouhi a course syllabus.

Approximately a week after she received the syllabus from DeLuca, Litkouhi submitted a FOIA request to Rochester for course materials related to the ethnic and gender studies course. The FOIA request sought

> all teacher training materials and references (written and video) for the "History of Ethnic and Gender Studies" course, given between August 1-September 10, 2021. If material is electronic, I request access via email. If book(s) were given to be used, I request that the book(s) be made available for me to come and review.
>
> Also, I request access to and a copy of all teacher lesson plans, readings given to students (articles, publications, case studies), viewings (video clips), and assignments used to evaluate students (writing prompts) used for the "History of Ethnic and Gender Studies" Course at Rochester High School, Adams High School, and Stoney Creek High School during the time period from August 30-September 10, 2021. If material is electronic, I request access via email. If book(s) were given to be used, I request that the book(s) be made available for me to come and review.

In an early October 2021 letter, Elizabeth Davis, Rochester's Chief Human Resource Officer and the FOIA Coordinator for the district, granted Litkouhi's request in part. Davis explained that the request was "denied to the extent that the District is not knowingly in the possession of any records responsive to [Litkouhi's] request" for lesson plans, readings, viewings, or assignments to evaluate students between August 30, 2021, through September 10, 2021. Davis indicated the letter "serve[d] as the District's certification that no responsive records are known to exist."[1] Davis granted the request for teacher training materials and references for the course. She indicated that the "responsive records known by the District to exist at this time ha[d] previously been provided to [Litkouhi]," but were "attached to this letter as well." The document produced with the October 2021 letter mirrored the one Zwolinski produced at DeLuca's request and that DeLuca had forwarded to Litkouhi.

In mid-December 2021, Litkouhi emailed Davis another FOIA request. The request was similar to her earlier request; she sought

---

[1] The affidavits of Joshua Wrinkle, principal of Rochester High School, and Pasquale Cusumano, principal of Adams High School, indicate that the teachers teaching the ethnic and gender studies course (Zwolinski at Rochester High School and Allie Danielson at Adams High School) were not members of the school administration and that all teachers at their respective schools were "not required to create, retain or provide any such documents" to the principals "or anyone else in the administration," except if the teacher is on a "performance improvement plan." Neither teacher was on a performance improvement plan. Both individuals stated that their respective administrations were "not and ha[d] not been in possession of any such documents" responsive to Litkouhi's request.

access to and a copy of all teacher lesson plans, curriculum, readings given to students (such as articles, publications, case studies), viewings (such as video clips), and assignments given to students (such as writing or discussion prompts) used for the "History of Ethnic and Gender Studies" Course at Rochester High School during the time period from August 30 – present. Also, I request access to teacher prompts made on Flipgrid and Google classroom during the time period from August 30 – present. If material is electronic, I request access via email. If book(s) were given to be used, I request that the book(s) be made available to me to come and review.

Litkouhi also asked Davis to provide a written explanation should she deny Litkouhi's request, asking for "reference to the specific statutory exemption(s) upon which you rely" and "all segregable portions of otherwise exempt material."

In a mid-January 2022 letter, Davis acknowledged receipt of Litkouhi's December 2021 FOIA request. Davis indicated that Litkouhi's "request [was] granted in part and denied in part." Davis granted the request "to the extent that a unit plan document was provided to you in our response dated October 4, 2021." Davis also explained the partial denial as follows:

[T]he District is not knowingly in the possession of any records responsive to your request for "teacher lesson plans," "readings given to students," "viewings," and "assignments used to evaluate student", or teacher prompts made on Flipgrid and Google classroom during the time period from August 30, 2021[,] through present. This letter serves as the District's certification that no responsive records are known to exist.

Litkouhi received this letter on January 12, 2022.

A week after receiving the letter from Davis, Litkouhi emailed Dr. Robert Shaner, Rochester's superintendent. She wrote that, despite indications to the contrary from the district, she believed that "responsive documents do exist" because the class had "been allowed to run uninterrupted for the last 6 months." She asked Dr. Shaner to reconsider the district's response, indicating that although district administrators had "rebuffed" her requests, "common sense" and statements from others in the district suggested the documents existed. Litkouhi noted the likelihood of litigation, advised Dr. Shaner to preserve all documents related to the course, and indicated her willingness to discuss the issue to avoid court intervention. In an early February 2022 letter, Dr. Shaner responded to Litkouhi's appeal, noting his review of the issue. Dr. Shaner confirmed the accuracy of Davis's response and upheld her decision, denying Litkouhi's appeal.

In mid-March 2022, Litkouhi sued Rochester, alleging a single claim for violation of FOIA. Within that single count, Litkouhi alleged that in denying her FOIA request, Rochester adopted a narrow reading of FOIA when it indicated that it only had to produce records in possession of district administrators and records held by member schools or individual teachers were not considered in the district's possession for FOIA purposes. She alleged that Rochester was obligated to produce responsive records used, possessed, or retained by its member schools, and to ask if any of the member schools had responsive materials in their possession. She also alleged that Rochester failed to properly identify an exemption when it withheld certain materials because

of copyright concerns.[2]  Litkouhi sought statutory damages for the alleged FOIA violations, and attorneys' fees and costs.

In late April 2022, Rochester answered Litkouhi's complaint and asserted various affirmative defenses, generally acknowledging the accuracy of her allegations related to the circumstances of her FOIA request and appeal, but otherwise denying the allegations as untrue, or neither admitting nor denying them.  Rochester admitted that some documents were not provided to Litkouhi, responding, however, that it did not know whether those documents even existed and denied possessing them.

In early July 2022, the parties stipulated to allowing Litkouhi to file an amended complaint. The amended complaint contained largely the same allegations regarding Litkouhi's request related to the course on ethnic and gender studies.  Relevant here, Litkouhi added allegations that Rochester had a duty to locate and produce any responsive records possessed by any schools or individual teachers.  Rochester answered in mid-July 2022, largely tracking the answers in its initial answer.  It denied, however, that it had a duty to locate and produce records that schools or individual teachers may possess.  In early August 2022, Rochester filed a notice of deposition, seeking to depose Litkouhi because her complaint was "replete with allegations raising factual issues" requiring discovery.  Litkouhi opposed the deposition and sought to quash it; the court adjourned the motion to quash.

Critical to this appeal, the trial court, in mid-September 2022, entered a stipulated order regarding early motions for summary disposition.  Acknowledging that the case "present[ed] two purely legal issues," the parties stipulated that the first issue involved Litkouhi's December 2021 request.  The order states:

> Plaintiff's position is that FOIA requires Defendant to provide any responsive records prepared, owned, used, or possessed by individual teachers.  Defendant's position is that it is not required [to] search for or provide[] such records.  The parties agree that if the Court were to find in favor of Defendant's position that it is not required to search for or provide for such records then Plaintiff's claims regarding her December 14, 2021 FOIA request should be dismissed.  However, if the Court finds in favor of Plaintiff's position that Defendant is required to search for and provide such records, then fact questions remain and the case would proceed to resolve those issues.

The order also stayed discovery pending resolution of the summary-disposition motion, noting it would reopen for 90 days if the court denied Rochester's motion related to the December 2021 request.  The parties also waived oral argument on any dispositive motions.

Rochester moved for summary disposition under MCR 2.116(C)(8) and (10).  It argued that records created and retained by individual teachers were not "public records" as defined in FOIA.  It reasoned that, under FOIA, only records of "public bodies" were subject to disclosure

---

[2] The parties stipulated to the dismissal without prejudice of Litkouhi's claims related to the copyright issue in early October 2022.  This issue is not part of this appeal.

(with some exceptions), and because teachers do not constitute "public bodies" under FOIA, their individual records need not be disclosed. Rochester acknowledged that it, as a school district, constituted a public body, but asserted that it had not "prepared, used, owned, possessed or retained the documents [Litkouhi] requested by her" in December 2021. It therefore argued that because teachers are not public bodies, "whatever papers they may possess are not" public records.[3]

Litkouhi responded to Rochester's motion for summary disposition. Citing MCL 15.231(2)'s statement about entitlement to "full and complete information" regarding governmental affairs and the acts of "public employees," Litkouhi argued that FOIA requires disclosure of all records of a public body, unless they are specifically exempt. Litkouhi asserted that schools, "indisputably" part of school districts, were not excluded from the definition of a public body, and teachers were not "excluded from what constitutes a public employee." Litkouhi acknowledged that some materials were exempt from disclosure, asserting, however, that Rochester had not established the applicability of an exemption.

Litkouhi argued that Rochester incorrectly suggested that the exclusion of the term "employee" from subsections defining "public body" (other than one referencing the state executive branch) "means that employees are exempt from FOIA," asserting such a misinterpretation would "gut FOIA . . . ." She further asserted that documents requested under FOIA were obtainable from all employees, not just administrators, and teachers were "indisputably public employees" because, citing MCL 15.232(h)(*iv*), their positions were primarily funded by or through state or local authority.[4] Litkouhi also argued that because a school district is an artificial entity, it could only act through its employees or agents, so the requested records should be subject to disclosure.

Litkouhi contended that Rochester also could not withhold documents simply because the administration did not possess the documents at the time of her request. Documents possessed by public employees were only beyond FOIA's reach, Litkouhi argued, if they were an employee's personal documents or a statutory exemption applied. Litkouhi asserted that FOIA did not limit

---

[3] Relevant to some of Litkouhi's arguments in her responsive brief, Rochester also asserted in its factual background that teachers in the district were "not members of the administration," but were instead "employees and members of a bargaining unit represented by the Michigan Education Association." Litkouhi responded to this argument by contending that a collective bargaining agreement "cannot supersede FOIA." Referencing the collective bargaining agreement apparently in effect at the time of Litkouhi's FOIA request, she argued that a provision related to teachers and FOIA requests "can be read to anticipate that teachers may have to provide documents in response to FOIA requests."

[4] The subsection Litkouhi cited relates to a "body" that is "primarily funded by or through state or local authority," not a position or individual. MCL 15.232(h)(*iv*) (a subsection of the definition of "public body") states in full:

> Any other body that is created by state or local authority or is primarily funded by or through state or local authority, except that the judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body.

disclosure to those documents possessed by administrators, and to read such language into the statute would be improper and require courts to perform a tedious analysis of the issues. This analysis, Litkouhi argued, was "completely unnecessary," however, because FOIA already provided that all persons are entitled to the full and complete information of governmental affairs, including the acts of public employees. Litkouhi asked the court to deny Rochester's motion but grant summary disposition in her favor under MCR 2.116(I)(2), and allow discovery to continue.

In late October 2022, Rochester replied in support of its motion for summary disposition. Rochester noted that Litkouhi addressed arguments Rochester "never made on th[e] issue" of disclosure, including arguments related to collective bargaining agreements and claiming that Rochester had cast teachers as employees of a union or bargaining union. Rochester asserted it never made any of these arguments and did not further address them.

Rochester did, however, address two of Litkouhi's arguments. First, Rochester argued that, contrary to Litkouhi's position, the definition of "public body" in MCL 15.232 controlled, and that Litkouhi improperly added language to MCL 15.231(2) that documents were obtainable from all employees. According to Rochester, that provision simply provided that information *about* public employees could be obtained consistent with other provisions of FOIA; it directed parties to other sections of FOIA to address "which documents are obtainable, and who they may be obtained from." Rochester reiterated that, under FOIA, documents created or possessed by a teacher but not the district are not public records subject to disclosure. It argued that MCL 15.232 "makes it perfectly clear that teachers are not public bodies for purposes of FOIA" and any documents they produce or use in day-to-day instruction are not public records. Second, Rochester argued that in *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217; 683 NW2d 639 (2004), our Supreme Court rejected an agency argument like that raised by Litkouhi.

In mid-December 2022, the trial court entered an order granting summary disposition to Rochester. The court noted the September 2022 stipulated order, which provided the parties' agreement that if the court found in Rochester's favor, Litkouhi's claim regarding the December 2021 FOIA request should be dismissed. The trial court found that the Legislature "did not intend for a public school district's *employees* to be included in the definition of 'public bodies' relative to FOIA." The court rejected Litkouhi's request to treat a public school teacher's individual work product as discoverable public records of a public body. It therefore found that Litkouhi's complaint failed to state a claim upon which relief could be granted and granted summary disposition in Rochester's favor under MCR 2.116(C)(8). The court also found that even if teachers were "public bodies" for purposes of FOIA requests, the evidence showed that Rochester had not "prepared, owned, used, possessed, or retained the documents requested by" Litkouhi in December 2021. It therefore found summary disposition alternatively appropriate under MCR 2.116(C)(10). This appeal followed.

## II. STANDARD OF REVIEW[5]

---

[5] Litkouhi did not raise her argument related to the Management and Budget Act below, and the trial court did not address or decide it, so that aspect of her argument is unpreserved. See *Glasker-*

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. at 159 (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

---

*Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (explaining that to preserve an issue for appeal it must be raised in or decided by the trial court).

This Court has historically applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Mr Sunshine v Delta College of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022); *Demski v Petlick*, 309 Mich App 404, 426-427, 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledg[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Our Supreme Court has yet to state definitively which standard is the appropriate standard for the civil context. See *Shah*, 324 Mich App at 194 n 5 (noting that our Supreme Court has applied plain-error in certain civil contexts and declining to decide "under what circumstances the plain-error standard of review should be applied in the civil context"). But see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-5 (holding that our Supreme Court requires application of the so-called raise-or-waive standard).

But recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. See *Tolas*, ___ Mich App at ___; slip op at 2-5. Regardless, this Court may still "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at ___; slip op at 3 (quotation marks and citations omitted). As a published decision, this Court is bound by *Tolas*. See MCR 7.215(C)(2). As required by *Tolas*, the issue related to the Management and Budget Act is waived. See *id.* at ___; slip op at 2-5. Although the so-called raise-or-waive rule has several exceptions, we decline to address the issue. See *Tolas*, ___ Mich App at ___; slip op at 3.

We review questions of statutory interpretation de novo. *Wells Fargo Rail Corp v State of Michigan*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 3.

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022) (quotation marks and citations omitted).]

"Whether requested information fits within an exemption from disclosure under FOIA is a mixed question of fact and law, and, on appeal, the trial court's factual determinations are reviewed for clear error, but its legal conclusions are reviewed de novo." *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 205; 725 NW2d 84 (2006). Clear error exists when this Court is definitely and firmly convinced the trial court made a mistake. *Mich Open Carry, Inc v Dep't of State Police*, 330 Mich App 614, 621; 950 NW2d 484 (2019).

## III. PUBLIC SCHOOL EMPLOYEES ARE NOT INCLUDED IN THE DEFINITION OF A "PUBLIC BODY" UNDER THE FREEDOM OF INFORMATION ACT

Litkouhi argues that the trial court erred when it found that the definition of a "public body" under FOIA does not include public school district employees and thus their individual work product is not discoverable as a public record. We disagree.

"The purpose of FOIA is to provide to the people of Michigan 'full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees,' thereby allowing them to 'fully participate in the democratic process.'" *Amberg v Dearborn*, 497 Mich 28, 30; 859 NW2d 674 (2014), quoting MCL 15.231(2). "The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies." *Mich Open Carry, Inc*, 330 Mich App at 625 (quotation marks and citation omitted). It must therefore be "broadly interpreted to allow public access to" records held by public bodies. *Id.* And the statutory exemptions to FOIA disclosures must be narrowly construed "to serve the policy of open access to public records." *Id.*

Under MCL 15.232(h) "public body" is defined as any of the following:

> (*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.

> (*ii*) An agency, board, commission, or council in the legislative branch of the state government.

(*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.

(*iv*) Any other body that is created by state or local authority or is primarily funded by or through state or local authority, except that the judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body.

MCL 15.232(i) defines a public record as a "writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." FOIA "separates public records into" two classes: (1) those exempt from disclosure under MCL 15.243 and (2) "[a]ll public records that are not exempt from disclosure under [MCL 15.243] and that are subject to disclosure under this act." MCL 15.232(i)(*i*) and (*ii*).

What ultimately determines whether records in the possession of a public body are public records within the meaning of FOIA is whether the public body prepared, owned, used, possessed, or retained them in the performance of an official function. In the event a FOIA request is denied and the requesting party commences a circuit court action to compel disclosure of a public record, the public body bears the burden of sustaining its decision to withhold the requested record from disclosure. [*Blackwell v Livonia*, 339 Mich App 495, 502-503; 984 NW2d 780 (2021) (quotation marks, citations, and brackets omitted).]

In *Blackwell*, this Court held that private direct messages that the mayor sent or received via an unofficial Facebook page were not subject to disclosure simply because the mayor was an administrative officer for the defendant city. *Blackwell*, 339 Mich App at 508. This Court stated that, instead, the messages were subject to FOIA disclosure "only if such messages were utilized by the city of Livonia mayor's office in the performance of an official function." *Id*., citing MCL 15.232(i). The *Blackwell* Court quoted language from *Howell Ed Ass'n, MEA/NEA v Howell Bd of Ed*, 287 Mich App 228, 237; 789 NW2d 495 (2010), stating that "unofficial private writings belonging solely to an individual should not be subject to public disclosure merely because that individual is a state employee and the same is true for all public body employees." *Blackwell*, 339 Mich App at 508 (cleaned up). In arriving at this decision, the *Blackwell* Court also cited our Supreme Court's decision in *Bisio v Clarkston*, 506 Mich 37; 954 NW2d 95 (2020), and noted the distinction the *Bisio* Court recognized "between the city attorney—the individual—and the office of the city attorney—the public body[.]" *Blackwell*, 339 Mich App at 505, citing *Bisio*, 506 Mich at 53 n 10. This Court then noted that although "FOIA includes in the definition of 'public body' officers and employees of state government, see MCL 15.232(h)(*i*), the definitional section does not also include officers and employees of municipalities such as cities or townships." *Blackwell*, 339 Mich App at 505. This distinction between state and local government officials, the *Blackwell* Court concluded, "demonstrate[d] the Legislature's intent to exclude individual government officers and employees not working in state government from the definition of 'public body.' " *Id*.; see *Breighner*, 471 Mich at 233 n 6 ("[I]t would defy logic (as well as the plain language of § 232[d][iii]) to conclude that the Legislature intended that any person or entity qualifying as an

-9-

'agent' of one of the enumerated governmental bodies would be considered a 'public body' for purposes of the FOIA.") (second alteration in original).[6]

Public school teachers are not included in the definition of "public body" and therefore records created and retained by individual teachers are not public records subject to disclosure for purposes of FOIA.[7] The parties focus primarily on MCL 15.232(h)(*i*) and (*iii*) for the definition of public body. Those two subsections, to reiterate, define a public body as follows:

> (*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.
>
> * * *
>
> (*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof. [MCL 15.232(h)(*i*) and (*iii*).]

As the *Blackwell* Court noted, subsection (*i*) references state-level employees in the executive branch but not local government employees. *Blackwell*, 339 Mich App at 505. See also MCL 15.232(h)(*i*). Subsection (*iii*) refers to different local-level governmental units or divisions. See *Breighner*, 471 Mich at 232 (recognizing that the term "agency" in what was previously MCL 15.232(d)(*iii*)—now MCL 15.232(h)(*iii*)—refers to a "unit or division of government," not a principal-agent relationship) (emphasis omitted). The term "employee" is wholly absent from the subsection related to local governmental units. See MCL 15.232(h)(*iii*). And "express mention in a statute of one thing implies the exclusion of other similar things." *Bradley v Saranac Comm Sch*

---

[6] When our Supreme Court decided *Breighner* in 2004, the language that is now found in MCL 15.232(h) was previously found in MCL 15.232(d) (with some revisions). Compare 1997 PA 553, effective March 31, 1997, with 2018 PA 68, effective June 17, 2018.

[7] The posture of this case, and its limited facts, necessarily limits the scope of our decision. By stipulation, the parties agreed—before substantial discovery occurred—that a narrow legal issue dictated the outcome of this case. We therefore limit our analysis to the legal issue which turns on the interpretation of "public body" as defined in FOIA, MCL 15.232(h)(*i*) and (*iii*). We acknowledge that scenarios exist where an individual teacher possesses documents requiring disclosure under other FOIA provisions. (For example, a teacher maintaining lesson plans or other documents in a brief case or private email that a school district directed them to generate, therefore making the document one that the school district uses or possesses.) But those factual scenarios are not present here. As discussed below, to the extent further discovery might reveal those factual scenarios to be present, Litkouhi has waived that argument through her stipulation.

-10-

*Bd of Ed*, 455 Mich 285, 289; 565 NW2d 650 (1997).[8]  Thus, by including the term "employee" in MCL 15.232(h)(*i*), and limiting that provision to state-level positions, and excluding "employee" from MCL 15.232(h)(*iii*), we conclude that the Legislature intended *not* to include local governmental employees in the definition of "public bodies."  Further, although "school district" is included in MCL 15.232(h)(*iii*), and, public school teachers work at public schools which are part of school districts, this is akin to the agency-agent distinction the Supreme Court rejected in *Breighner*.  See *Breighner*, 471 Mich at 231-233 (holding that "agency" as used in Seciton 232(d)(iii), "clearly refers to a *unit or division of government* and not to the *relationship* between a principal and an agent.") (Emphasis in original).  Had the Legislature intended to include public employees at the local level, whether generally or those employed by specific governmental units—like a school district—in the definition of "public body," it could have included them in the explicit definition of "public body."  See *id*.  It did not do so and we will not read "employee," "public employee," "public school teacher," or any other iteration of these terms into the definition of "public body," as Litkouhi urges.

Litkouhi contends that MCL 15.231(2) controls and entitles her to disclosure of "full and complete information" about the acts of public employees (here, public school teachers).  Focusing on this language, she ignores the language that this access to "full and complete information" is qualified by "consistent with this act."  See *id*. ("It is the public policy of this state that all persons . . . are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, *consistent with this act*") (emphasis added).  Here, this means that public school teachers must qualify as a public body for any of their individually-held records to be subject to disclosure under FOIA.  They do not satisfy the definition of a "public body" as discussed and therefore their individually-held and individually-maintained records are not subject to disclosure under FOIA.  See also *Bradley*, 455 Mich at 296 (concluding that the appellant school teacher and school administrators lacked standing to assert exemption in seeking to prevent disclosure of personnel files and holding that "the proper party to raise this exemption [was] the school district, not the appellants.").

---

[8] Litkouhi argues that courts must not engage in judicial construction when a statute is unambiguous.  This is true.  See *Sclafani v Domestic Violence Escape*, 255 Mich App 260, 266; 660 NW2d 97 (2003).  But this doctrine (the expression of one thing implies the exclusion of others) "is a rule of statutory interpretation meant to help ascertain the intent of the Legislature"— a court's ultimate goal in statutory interpretation—and "does not subsume the plain language of the statute when determining the intent of the Legislature." *Tuggle v Dep't of State Police*, 269 Mich App 657, 663; 712 NW2d 750 (2005).  And "[i]t has been described as a rule of construction that is a product of logic and common sense.  The doctrine characterizes the general practice that when people say one thing they do not mean something else." *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009) (quotation marks and citations omitted).  It is appropriate to rely on this doctrine if we must look beyond the terms of the statute to discern the Legislature's intent with respect to whether local government employees are included in the definition of public body in MCL 15.232(h).  See *Detroit City Council*, 283 Mich App at 456-458 (applying the doctrine of *expressio unius est exclusio alterius* and declining to read language into the statute).

Litkouhi urges this Court to reject applying *Blackwell* and *Breighner* to this case. Regarding *Blackwell*, she contends that it did not involve the work product of public employees and any statement in it regarding that issue was simply dicta. We reject this argument because the discussion Litkouhi paints as dicta is not actually dicta. She asserts that "any determination" in *Blackwell* regarding a public employee's work product is dicta. But "dictum" is "a judicial comment that is not necessary to the decision in the case." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) (citation omitted). See *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007) (holding that although "[s]tare decisis does not arise from a point addressed in obiter dictum," "an issue that is intentionally addressed and decided is *not* dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case."). *Blackwell* pointed out that the definition of "public body" included officers and employees of *state* government, but not of local governments. *Blackwell*, 339 Mich App at 505. This led the *Blackwell* Court to conclude, as noted, that this distinction "demonstrate[d] the Legislature's intent to exclude individual government officers and employees not working in state government from the definition of 'public body.' " *Id*. This conclusion supported this Court's decision that the office of the mayor—a public body—did not retain, use, or possess the messages of a political office holder's social media account "such that those messages bec[a]me 'public records' under FOIA." *Id*. at 503. That is, it was a discussion necessary to the decision for determining whether the mayor's communications on a private social media account were subject to disclosure under FOIA. See *Pew*, 307 Mich App at 334; *Griswold Props, LLC*, 276 Mich App at 563. The portion of *Blackwell* that Litkouhi claims is dicta was necessary to the determination of the case and is therefore not dicta.

Regarding *Breighner*, Litkouhi argues it was "error for the *Blackwell* court to say that *Breighner held* that" the Legislature intended to exclude non-state governmental employees from the definition of "public body." First, *Blackwell* did not claim this was a holding of *Breighner*; it cited and quoted language from *Breighner* with a "See" signal, *Blackwell*, 339 Mich App at 505, a signal denoting clear support for a proposition with an inferential step required. See Bluebook Rule 1.2; Michigan Appellate Opinion Manual, pp 4-5, § 1:3. Second, *Breighner* may not have involved public employees as Litkouhi points out, but the *Blackwell* Court's citation to it, and the trial court's reliance on both *Blackwell* and *Breighner*, was not improper. The language in *Breighner* cited by *Blackwell* and then relied on by the trial court supports the proposition that the Legislature intended to exclude public employees from the definition of "public body." By using the "See" signal, the *Blackwell* Court asked readers to make an inferential step to conclude that *Breighner* supported the general proposition that the Legislature intended to exclude non-state governmental employees from the definition of "public body."

Litkouhi also argues that summary disposition was prematurely granted because insufficient discovery had been conducted. We reject this argument based on Litkouhi's waiver before the trial court. According to the parties' stipulation, during "premotion discovery mediation," "the parties recognized that this case present[ed] two purely legal issues . . . ." The parties stipulated that "depending on how the court rules on those issues," they "may resolve the entire case and render discovery unnecessary." They also stipulated to staying discovery pending the trial court's ruling on the motion(s) for summary disposition, and that discovery would reopen for 90 days if the court did not grant Rochester's motion related to the December 2021 FOIA request—the request at issue on appeal. On top of that, the parties agreed that if the court found in Rochester's favor, Litkouhi's claims related to the relevant FOIA request should be dismissed.

The parties thus agreed to dismissal before the completion of discovery if the court agreed with Rochester's position. The trial court did just that, and that decision was not erroneous. Litkouhi effectively waived this argument by agreeing to pre- or mid-discovery dismissal if the court agreed with Rochester. *Grant v AAA Mich/Wisconsin, Inc*, 272 Mich App 142, 148; 724 NW2d 498 (2006) ("A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal.").

In conclusion, public school teachers do not qualify as "public bodies" for purposes of MCL 15.232(h)(*i*) or (*iii*) of FOIA. Their records are therefore not subject to disclosure under FOIA under those provisions. Any suggestion by Litkouhi that this Court should read public school teachers or public employees generally into the definition of public body in MCL 15.232(h) is improper; her efforts are more appropriately directed to the Legislature. See *Woodman v Kera, LLC*, 486 Mich 228, 246; 785 NW2d 1 (2010) (noting the "superiority of the Legislature to address matters of public policy" over the courts).

We affirm.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood